**Sharon SMITH, Plaintiff,**

v.

**The CONWAY ORGANIZATION, INC., Defendant.**

**No. 92 Civ. 7329 (RWS).**

United States District Court,
S.D. New York.

Dec. 22, 1994.

Dienst & Serrins (Alan Serrins, Traycee Ellen Klein, of counsel), New York City, for plaintiff.

Reid & Priest (Adin C. Goldberg, Stephen W. Feingold, Pamela C. Tames, of counsel), New York City, for defendant.

### OPINION

SWEET, District Judge.

Defendant the Conway Organization, Inc., ("Conway") has moved for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., granting them summary judgment dismissing the complaint of the plaintiff Sharon Smith ("Smith"). For the following reasons, this motion is denied.

### Parties

The Plaintiff, Smith, a black woman, is a resident of New York, New York.

The Defendant, Conway, is a department store chain with its principal offices located in New York, New York.

### Prior Proceedings

On October 8, 1992, Smith filed this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and 42 U.S.C. § 1981 claiming that Conway did not hire her on the basis of race.

On June 8, 1994 Conway filed this motion for summary judgment. Responsive papers were filed. The motion was marked off the calendar until October 5, 1994 when oral argument was heard, and the motion was considered fully submitted.

### Facts

In December 1991 Conway advertised for a Receptionist. Two of the advertisements were as follows:

*RECEPTIONIST*

Organized, pleasant individual is needed for front desk at our Broadway office. A good phone voice and mature attitude are necessary to succeed in this position. Hours will be 9:00 AM to 6:30 PM.

RECEPTIONIST

Energetic, competent receptionist needed for fast-paced retail company. Excellent communications skills necessary. For more information, please call ...

*New York Times,* December 29, 1991.

Smith submitted her resume and an application for a position as a receptionist with Conway's after seeing the advertisement placed in the College Placement Office at Bernard Baruch College.

Between January 1 and 3, 1992, Smith was contacted by Kevin Larkin ("Larkin") an employee in the Human Resources Department at Conway. She was subsequently interviewed by three of Conway's human resources personnel, including Larkin.[1]

On January 9, 1992 Smith contacted Larkin to see if she had the job and according to Smith and Larkin she was informed that she had been his first choice and the first choice of Galotti, but that she had not been hired because the Broadway executive office was not suitable for someone who is black.

During the course of this litigation, Conway had discovered that Smith did not fill out her employment application with all of the requested information.

The Conway application form contains a space in which the applicant is directed to

---

1. She was interviewed by Larkin on January 6, by another human resources employee, Louise Galotti ("Galotti") on January 7 and by Janet Riesel ("Riesel"), the Director of Human Resources for Conway.

"(*l*)ist below last three employers, starting with last one first." Smith failed to list her two most recent employers, American Cancer Society (10/91—12/91) and Audits and Survey (9/91—10/91). She was employed in the latter for five days. She was employed as a secretary by each of these employers and was fired for poor performance.

Instead she listed Milliken & Company, Senior Secretary (9/90—6/91); Corroon & Black, Receptionist/Secretary (7/89—4/90); and Rita Uebb Realty, Administrative Assistant (6/85–6/89) as her three most recent employers and jobs.

Conway's employment application states underneath the place for the applicant's signature:

> I CERTIFY THAT THE FACTS CONTAINED IN THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND UNDERSTAND THAT IF EMPLOYED, FALSIFIED STATEMENTS ON THIS APPLICATION SHALL BE GROUNDS FOR DISMISSAL.

Smith's resume did not list the American Cancer Society or Audits and Survey's jobs, nor did it include her two month job as an administrative assistant at PenCom Systems[2] which she left voluntarily.

### Discussion

### Standards Applicable to a Motion for Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of material fact exists. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *Pittston Warehouse Corp. v. American Motorists Ins. Co.,* 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd,* 954 F.2d 62 (2d Cir.1992).

The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady,* 863 F.2d at 210; *see also Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983); *Swan Brewery Co. v. United States Trust Co.,* 832 F.Supp. 714, 717 (S.D.N.Y.1993).

However, the remedy of summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In responding to a properly supported motion for summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must adduce "significant probative supporting evidence" demonstrating that a "factual dispute exists." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### Burden of Proof

 Smith brings this claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a three-step process for the order and allocation of proof for actions under Title VII. *See also Hudson v. International Business Mach. Corp.,* 620 F.2d 351, 354 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). Smith bears the initial burden of establishing a

---

**2.** PenCom was not one of her last three jobs and therefore was not specifically requested by Con-

way on its application.

*prima facie* case of discrimination. In cases involving a charge of discriminatory discharge, such a *prima facie* case requires evidence that the plaintiff belongs to a minority, that she applied for and satisfied the requirements for a job for which the employer was seeking applicants, and that she was rejected for discriminatory reasons. *See McDonnell Douglas* (establishing the basic framework for the prima facie case and noting that it must be flexible to accommodate the wide variety of circumstances).

■ While this motion for summary judgment does not directly address the *prima facie* case, it is noted that Smith has established it. Larkin's affidavit states that "Galotti and I both agreed that ... Smith was the most qualified candidate" but that he was told that she would not be acceptable for the receptionist job at the corporate office because she was Black. In his deposition, Larkin said that he informed Smith that "no one had been offered the job officially, but it looked like she wasn't going to get the position.... [The reason he gave her was] [t]hat she was black."

While Conway has asserted that Smith was not hired because the receptionist position paid significantly less than Smith received in her previous job and therefore might not stay[3], and because the director of Human Resources felt that another candidate had a personality that was more suited for the position[4], Reisel Dep. at 106–09, 122–24, Smith has demonstrated enough in the affidavits and deposition testimony submitted to preclude a finding of summary judgment on her claim of discrimination.

### After–Acquired Evidence Does Not Provide a Defense

■ The thrust of Conway's argument, however, is not directed at Smith's *prima facie* case, rather the argument is that be-cause Smith failed to complete her application accurately, and because on those grounds alone she would not have been hired, there is no cause of action against Conway. The use of after-acquired evidence as a defense in employment discrimination cases is an area of law that is still developing.

The Second Circuit has not addressed this issue and there is a split among the five circuits that have addressed it.[5] There are two groups. The Tenth, Sixth and Eighth Circuits have held that after-acquired evidence of resume/application fraud may be used as a total bar to a discrimination claim. The Third and Eleventh Circuits have held that while after-acquired evidence may be used to determine remedies, it is inadmissible at the stage of determining liability.

In the first group, the courts generally followed the lead of the Tenth Circuit's *Summers* decision. In *Summers v. State Farm Mut. Ins. Co.,* 864 F.2d 700 (10th Cir.1988), the Court, based on evidence of extensive on the job misconduct and ruling on a motion for summary judgment, held that the after-acquired evidence of Summers' misconduct would preclude Summers from any relief and would, effectively, avert the defendants liability. *Id.* at 702–03.

Following *Summers,* courts have used after-acquired evidence to bar the employers' liability and to preclude any relief in resume and/or application fraud cases and in misconduct on the job cases. In either sort of case, the employer alleges that had it known of the fraud or improper conduct it would have taken the adverse employment action. *See Milligan v. Michigan Tech Univ.,* 975 F.2d 302 (6th Cir.1992) (summary judgment granted on after-acquired evidence of omission of drunk driving conviction on employment application), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 22, 125 L.Ed.2d 773 (1993); *Welch v. Liberty Mach. Works, Inc.,* 23 F.3d 1403,

---

3. The successful candidate faced a decrease in salary coming to Conways, albeit less of one than Smith.

4. These alternative theories for Conway's decision not to hire Smith are not articulated in its 3–G statement and all of the legal arguments in its initial memorandum of law are dedicated to the after acquired evidence defense.

5. The Supreme Court heard oral argument on November 2, 1994 in an appeal from the Sixth Circuit case of *McKennon v. Nashville Banner Publishing Co.,* 9 F.3d 539 (6th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994). The Circuit Court affirmed the use of after acquired evidence of misconduct in a wrongful discharge case.

1405 (8th Cir.1994) (adopting *Summers* holding regarding after-acquired evidence of omission from application, but denying summary judgment for failure to establish that it would not have hired worker because of the misrepresentation).

The Third and the Eleventh Circuit have adopted a different approach to after-acquired evidence in the employment context. Namely, these courts have held that while after-acquired evidence is inadmissible, because it is irrelevant, at the liability stage of a cause of action, it may serve a useful purpose at the remedies stage. *See Mardell v. Harleysville Life Insurance Co.*, 31 F.3d 1221 (3d. Cir.1994) (*"Mardell"*) (after-acquired evidence of resume/application misrepresentations not relevant to issue of liability in a discriminatory discharge case); *Wallace v. Dunn Construction Co.*, 968 F.2d 1174 (11th Cir.1992).

In summarizing its rational for not precluding liability on the basis of after-acquired evidence of resume/application misrepresentation, the *Mardell* court explained:

> A quick review of the overarching framework erected for employment discrimination claims ... discloses why after-acquired evidence cannot be a defense to liability. What sets an after-acquired evidence case far apart from a mixed-motives case like *Price Waterhouse* or a pretext case like *McDonnell Douglas* is that the articulated "legitimate" reason, which was non-existent at the time of the adverse decision could not possible have motivated the employer to the slightest degree. After-acquired evidence, simply put is not relevant in establishing liability under Title VII ... because the sole question to be answered at that state is whether the employer discriminated against the employee on the basis of an impermissible factor.

*Mardell*, 31 F.3d at 1228.

The Court went on to find that victims of invidious employment discrimination have standing, *Id.* at 1230 and that "where a federal right has been violated, federal courts must provide a remedy." *Id.* at 1232. The Court goes on to say that the rule developed in *Summers* (and followed by the other three circuits) "disregards that an act of employment of discrimination is much more than an ordinary font of tort law. The anti-employment discrimination laws are suffused with a public aura for reasons that are well known." *Id.* at 1234.

Neither party has pointed to any cases in this district that have addressed the relevancy of after-acquired evidence of resume and/or application fraud in the context of racial discrimination in a failure to hire context. The parties have pointed to five cases in the district that all involve claims of discriminatory dismissal; one of the courts followed the *Summers* approach, two determined that the after-acquired evidence would not act as a bar to liability, and two provided no guidance on the use of after-acquired evidence in this context.[6]

In *Moodie v. Federal Reserve Bank of New York*, 831 F.Supp. 333, 336 (S.D.N.Y. 1993), the Court adopted the position of the Eleventh Circuit as the sounder approach "as it balances the competing public interests of deterring discrimination while still allowing employers appropriate latitude in personnel decisions." That Court also stated that "[a]llowing the use of after-acquired evidence as a complete defense 'would have the perverse effect' of providing a windfall to employers who, in the absence of their unlawful act and the ensuing litigation, would never have discovered the wrongdoing." *Moodie*, 831 F.Supp. at 336 *quoting Wallace v. Dunn Construction Co., Inc.*, 968 F.2d 1174, 1182 (11th Cir.1992).

The approach adopted by the *Mardell* and *Moodie* courts is the more appropriate given that a primary purpose of Title VII is to eliminate employment discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d

---

**6.** The District Court in *Livingston v. Sorg*, 49 Fed.Emp.Prac.C. 1417, 1989 WL 407242 (S.D.N.Y.1989), allowed after-acquired evidence to support dismissal of a claim of discriminatory discharge, but did so with no discussion of the doctrine. The other two cases did not allow after-acquired evidence to determine liability for the allegedly wrongful firings. *See Smith v. Equitable Life Assurance Soc.*, 1993 WL 15485 (S.D.N.Y.1993); *Moodie v. Federal Reserve Bank of NY*, 831 F.Supp. 333 (S.D.N.Y.1993).

280 (1975). In addition, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) which sets forth the shifting burdens in a Title VII case, presupposes a legitimate, nondiscriminatory reason known to the employer at the time of the employment action. The after-acquired evidence is therefore not admissible to address the issue of liability and as such summary judgment is not appropriate on this record.

The defendant also argues that failure to hire cases are different and cites Court decisions in other circuits that have so held. The basic argument in those cases is that in the failure to hire context, there can be no harm because the plaintiff who might not have been hired is no worse off after the refusal to hire. The plaintiff is still jobless. The circuit court cases deciding this issue, however, were all decided prior to the enactment of the Civil Rights Act of 1991.

The Civil Rights Act of 1991 modified the position the Courts had taken in mixed motive cases [7] and declared that "[o]n a claim in which an individual proves a violation ... and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court ... may grant declaratory relief, injunctive relief ... and attorney's fees ... and ... shall not award damages or issue any order requiring any admission, reinstatement, hiring, promotion or payment." *codified at* 42 U.S.C. § 2000e–5 (1981 & Supp.1994).

The *Mardell* court noted that:

> In the Civil Rights Act of 1991, by authorizing the court to grant a victim of discrimination in a mixed motives case declaratory and injunctive relief and partial attorneys' fees and costs, Congress again recognized the public interest in eradicating discrimination even when the employer had acted at the time of its decision for a legitimate reason that would have propelled it to take the same actions standing alone.

*Mardell,* 31 F.3d at 1232.

In keeping with the rationale discussed above and with the 1991 amendment to the Civil Rights Act of 1964 which modified case law and allowed some relief as long as a plaintiff can prove that a discriminatory reason was at least part of the employer's motivation, the same framework should be applied in the failure to hire context. Namely, the lack of positional change of the plaintiff.is best figured into the equation at the remedy stage of the proceedings. The lack of positional change does not address the question of whether or not the employer engaged in a discriminatory act at the time it failed to hire a potential employee.

### Conclusion

For the reasons discussed above, the Defendant's motion for summary judgment is denied.

It is so ordered.

---

**7.** *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (discussing the position which was later modified by the amended Civil Rights Act).