Sammy **OSEI–BONSU**, Plaintiff,

v.

**FEDERAL HOME LOAN BANK OF NEW YORK**, Defendant.

No. 89 Civ. 1627 (PKL).

United States District Court,
S.D. New York.

Dec. 12, 1989.

---

Frederick K. Brewington, New York City, for plaintiff.

Leslie A. Bogen, Federal Home Loan Bank of New York, New York City, Kirkpatrick & Lockhart, Jeffrey B. Maletta, Washington, D.C., McGuire & Tiernan, Jeffrey A. Kehl, New York City, for defendant.

LEISURE, District Judge:

Plaintiff Sammy Osei–Bonsu brings this action against defendant Federal Home Loan Bank of New York (the "Bank") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff alleges that his employment at the bank was terminated illegally due to his race and national origin. Defendant brought a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.[1] Defendant contends that plaintiff failed to file a timely complaint with the Equal Employment Opportunity Commission (the "EEOC") within 180 days of the alleged discriminatory action as required by statute, 42 U.S.C. § 2000e–5(e), and by EEOC regulations, 29 C.F.R. 1601.3(a)(2).

## BACKGROUND

Plaintiff Osei–Bonsu is a black male and was born in the African country of Ghana. After emigration to the United States, he was hired as a Supervisory Analyst by the Federal Home Loan Bank of New York on February 17, 1981. On March 15, 1985, Osei–Bonsu received a memorandum stating that he would be discharged as of April 12, 1985, if he did not resign his position. Refusing to resign, Osei–Bonsu remained on the job until he was discharged on April 12.

On October 30, 1985, 228 days after receiving the memorandum dismissing him, Osei–Bonsu filed a *pro se* complaint of employment discrimination with the EEOC. Osei–Bonsu, who was unfamiliar with the procedures of the EEOC, was informed by his EEOC interviewer that his complaint would be also filed with the New York State Division of Human Rights (the "NYSDHR"). Affidavit of Sammy Osei–Bonsu, sworn to on August 25, 1989, ¶¶ 16–17. On February 19, 1987, Osei–Bonsu received a letter from the EEOC stating that the EEOC "has jurisdiction over the charge you recently filed and will be commencing its investigation under Title VII of the Civil Rights Act of 1964." Plaintiff's Exhibit C. On December 8, 1987, Osei–Bonsu received a letter from the NYSDHR indicating that it had on file a copy of his EEOC complaint, and that it would keep the complaint on file "until such time that the EEOC informs us of the results of its investigation." Plaintiff's Exhibit D.

Defendant contends that Osei–Bonsu's complaint was filed over 180 days after the alleged discriminatory conduct, and therefore it was not timely under the federal statute, 42 U.S.C. § 2000e–5(e), and EEOC regulations, 29 C.F.R. 1601.3(a)(2). Since the filing of a timely EEOC complaint is a prerequisite to bringing a Title VII action in federal court, *Zipes v. TransWorld*, 455 U.S. 385, 393–94, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982), defendant argues that the federal court action should be dismissed.

Plaintiff argues in response that under 42 U.S.C. § 2000e–5(e), a Title VII plaintiff

---

1. Defendant has filed a pre-answer motion to dismiss this federal court action on the grounds that plaintiff's discrimination complaint with the Equal Opportunity Employment Commis-

sion was untimely. Such a motion is treated by the Court as arising under Fed.R.Civ.P. 12(b)(6). *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir.1989).

is allowed 300 days to commence an EEOC action if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice...." Plaintiff argues that since the EEOC filed his complaint with the NYSDHR within 300 days of the alleged discrimination, the prerequisite to this federal court action has been fulfilled.

## DISCUSSION

■ The central legal issue in this case is whether the NYSDHR, or any other state or local agency, has jurisdiction over an employment discrimination dispute between the Federal Home Loan Bank of New York and one of its employees. Several courts have held that Federal Home Loan Banks are "federal instrumentalities." *See infra.* Defendant argues that the Banks are thus immune to employment discrimination actions brought by state or local agencies or under state law. If this is indeed the case, then the 180–day limit of § 2000e–5(e) applies, and plaintiff's action in this Court should be dismissed under *Zipes, supra,* 455 U.S. 385, 102 S.Ct. 1127. If the NYSDHR does have jurisdiction over Osei–Bonsu's complaint, and he properly filed it with the NYSDHR within 300 days of the discriminatory conduct, then the action before this Court may continue.

In 1932, the United States Congress passed the Federal Home Loan Bank Act, 12 U.S.C. § 1421 *et seq.,* thereby creating the Federal Home Loan Bank Board and vesting it with the authority to organize regional banks to carry out the measures of the Act. The Federal Home Loan Banks perform a similar function for the savings and loan industry as do the Federal Reserve Banks for the commercial banking industry. Since 1932, the Federal Home Loan Bank Board has created twelve regional banks, one of which is located in New York and is the defendant in this lawsuit.

In the most detailed discussion by a court of the status of Federal Home Loan Banks, the Ninth Circuit described the banks as "federal instrumentalities," possessing no powers or rights aside from those expressly granted by the enabling federal legislation. *Fahey v. O'Melveny & Myers,* 200 F.2d 420, 444–47 (9th Cir.), *cert. denied sub nom. Willhoit v. Fahey,* 345 U.S. 952, 73 S.Ct. 866, 97 L.Ed. 1374 (1953). The court compared the Federal Home Loan Bank system to the Federal Reserve system, stating that both are federal instrumentalities created by Congress to carry out a limited and wholly governmental function. *Id.* at 445–46. Other courts have later agreed with the propositions set out in *Fahey. See Rust v. Johnson,* 597 F.2d 174, 178 (9th Cir.1979); *Association of Data Processing Service Organizations, Inc. v. Federal Home Loan Bank Board,* 568 F.2d 478, 480 (6th Cir.1977); *Vazquez v. Bayamon Federal Savings and Loan Association of Puerto Rico,* 506 F.Supp. 113, 115 (D.P.R.1980).

Federal Home Loan Banks are given the power "to dismiss at pleasure [their] officers, employees, attorneys, and agents." 12 U.S.C. § 1432(a). An identical power is conferred by statute on the Federal Reserve Banks by the Federal Reserve Act of 1913. 12 U.S.C. § 341 (Fifth). This language has been interpreted by courts as precluding legal actions taken under state law in employment disputes. *Ana Leon T. v. Federal Reserve Bank of Chicago,* 823 F.2d 928, 931 (6th Cir.1987) (employment rights arising under Michigan law preempted by "discharge at pleasure" language of Federal Reserve Act); *Inglis v. Feinerman,* 701 F.2d 97, 98–99 (9th Cir.1983) ("attempts to create employment rights [for Federal Home Loan Bank employees] from independent sources ... are void under the Federal Home Loan Bank Act" due to the "dismiss at pleasure" language); *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1098 (9th Cir.1981) (attempts to create employment rights for Federal Reserve Bank employees from state law or any other independent source are precluded by Federal Reserve Act's "dismiss at pleasure" language).

The New York State Division of Human Rights was created pursuant to § 293 of the New York Human Rights Law of 1951.

N.Y. Executive Law § 290 *et seq.* (McKinney 1982). The NYSDHR is given the limited power of investigating and passing upon complaints brought under the New York Human Rights Law. *Id.* at § 295, subd. 6. In recognizing its own jurisdictional limits, the NYSDHR has dismissed at least two employment discrimination complaints filed by employees of the Federal Reserve Bank on the grounds that the Federal Reserve Bank is a federal instrumentality. The NYSDHR ruled that it had no power or jurisdiction to hear the complaints. *Small v. Federal Reserve Bank,* SDHR case no. la–E–NOR–87–123001 (October 13, 1987); *Borek v. Federal Reserve Bank,* SDHR case no. 4–E–D–84–97055 (July 30, 1984) (*citing Bollow, supra,* 650 F.2d 1093).

Although research has failed to reveal a case precisely on point supporting defendant's argument in this case, logic and consistency dictate that the Federal Home Loan Banks are federal instrumentalities, and that employment disputes between them and their employees may not be prosecuted by state or local agencies. The organization of the Federal Home Loan Banks is quite similar to that of the Federal Reserve Banks, and the statutory language allowing both banks to "discharge at pleasure" their employees is identical. Relating this finding to the language of 42 U.S.C. § 2000e–5(e), the Court now holds that an employee of the Federal Home Loan Bank must file a complaint with the EEOC within 180 days of the alleged discriminatory conduct if he is to later file a Title VII action against his employer in federal court.

Osei–Bonsu argues that a recent Supreme Court opinion, *E.E.O.C. v. Commercial Office Products Co.,* 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), allows a Title VII plaintiff to avail himself of the 300–day filing period even if his complaint is not timely filed with the appropriate state or local agency. The Court did indeed hold that a Title VII plaintiff who had filed a late complaint with the Colorado Civil Rights Division could still use the 300–day limit of 42 U.S.C. § 2000e–5(e). *Commercial Office Products, supra,* 108

S.Ct. at 1675–76. Yet the Court was quite clear that its holding was limited to late filings with state agencies which otherwise had unchallenged power to hear the complaint. *Id.* The Court's ruling is not relevant in the case at bar, for the question here concerns the actual ability of the NYSDHR to hear Title VII complaints brought by employees of federal instrumentalities.

■ Plaintiff Osei–Bonsu filed his complaint with the EEOC more than 180 days after the alleged discriminatory conduct, and thus his complaint before this Court must be dismissed. Though he did receive two misleading pieces of correspondence—a letter from the EEOC stating that it had "jurisdiction" over his complaint, and a letter from the NYSDHR stating that his complaint was "on file" in its office—the essential fact is that his EEOC complaint was not timely. Osei–Bonsu cannot complain of relying to his detriment on these misleading letters as they were not written until after he had already missed the filing deadline.

Osei–Bonsu also asks that this Court toll the limitations period of § 2000e–5(e), because he has acted for the most part *pro se* and was unfamiliar with EEOC procedures. The Supreme Court has explicitly allowed courts to apply the doctrines of waiver, estoppel and equitable tolling to the limitations period of § 2000e–5(e). *Zipes, supra,* 455 U.S. at 393, 102 S.Ct. at 1132. Osei–Bonsu argues that he was "seeking to pursue his rights in a quagmire of time limits and regulations." Plaintiff's brief at 10. He claims that the strict use of technical requirements should be discouraged when laymen initiate the legal process. *See Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Roberts v. Arizona Board of Regents,* 661 F.2d 796 (9th Cir. 1981).

The Second Circuit has held that "the essence of the doctrine [of equitable tolling] 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" *Cerbone v. I.L.G. W.U.,* 768 F.2d 45, 48 (2d Cir.1985) (*quoting*

*Long v. Abbott Mortgage Corp.,* 459 F.Supp. 108, 113 (D.Conn.1978)). Thus in the context of § 2000e–5(e) of Title VII, the limitations period is not

> tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by the employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum, in which tolling of the time period might be permitted as a matter of fairness.... An 'extraordinary' circumstance permitting tolling of the time bar on equitable grounds might exist if the employee could show it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory.

*Miller v. International Telephone and Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir. 1985). *Mauro v. Board of Higher Education,* 658 F.Supp. 322, 324 (S.D.N.Y. 1986). In brief, to toll the limitations period of § 2000e–5(e), a plaintiff must show with specificity how he was prevented from exercising his rights under Title VII despite his reasonable efforts.

Plaintiff Osei–Bonsu has made no such showing, aside from his assertion that he was unfamiliar with the procedures and filing requirements of Title VII. There is nothing before the Court which suggests that Osei–Bonsu's failure to file his complaint with the EEOC within 180 days of the alleged discriminatory conduct was due to any of the "extraordinary circumstances" described above. Osei–Bonsu's lack of knowledge of the proper filing procedures and his *pro se* status are not sufficient to invoke the doctrine of equitable tolling. His receipt of two misleading letters from the EEOC and the NYSDHR claiming that his complaint had been filed with both agencies occurred *after* his original untimely complaint with the EEOC and thus cannot be used to explain why that filing was late.

The filing requirements of § 2000e–5(e) serve important policy ends and are not to be easily avoided. "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Mauro, supra,* 658 F.Supp. at 323. The *Delaware State* Court went on to point out that limitations periods reflect " 'a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.' " *Delaware State, supra,* 449 U.S. at 260, 101 S.Ct. at 505 (*quoting Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975)). The interests of defendant Federal Home Loan Bank of New York require such protection in this case.

## CONCLUSION

Plaintiff's complaint is dismissed in its entirety under Fed.R.Civ.P. 12(b)(6).

SO ORDERED.