**Vincent A. MOODIE, Plaintiff,**

v.

**FEDERAL RESERVE BANK OF NEW YORK, Defendant.**

**No. 91 Civ. 6629(MEL).**

United States District Court, S.D. New York.

Sept. 20, 1993.

---

Cleary, Gottlieb, Steen & Hamilton, New York City (Thomas J. Moloney, David M. Meisels, Alex E. Miller, of counsel), for plaintiff.

Ernest T. Patrikis, Federal Reserve Bank of New York, New York City (Joseph H. Sommer, Thomas C. Baxter, Jr., of counsel), for defendant.

LASKER, District Judge.

Vincent Moodie brings this action against his former employer, the Federal Reserve Bank of New York, for discrimination based on race, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and New York State Human Rights Law, Executive Law § 290 *et seq.* (Amendments contained in the 1991 Civil Rights Act do not apply here as this case was not pending at the time of its enactment.) The Federal Reserve Bank moves for summary judgment.

## I.

Moodie is a black male of Jamaican descent who worked as a unit head in the computer operations division of the Federal Reserve Bank of New York ("the Bank"). The Bank is a corporation chartered under the laws of the United States with its principal place of business in New York City. On October 4, 1989, Moodie became involved at the Bank in an altercation with a Caucasian co-worker, Tony Riolo. After the incident, the Bank conducted an internal investigation and, on October 13, 1989, discharged him.

Subsequent to his discharge, Moodie filed a complaint with the New York State Division of Human Rights, claiming unlawful employment discrimination based on his age and race. That complaint was dismissed for lack of jurisdiction. The State Division concluded that the Federal Reserve Bank is a corporate instrumentality of the United States and, as such, is not subject to the New York State Human Rights Law. Moodie also filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On September 27, 1991, the EEOC determined that the evidence did not establish a violation and issued a "right to sue" letter. Moodie then commenced this action.

Discovery in the case has been completed and the record includes the deposition testimony of several witnesses to the altercation as well as the testimony of supervisors and other Bank employees involved in the internal investigation. In the course of discovery, it has been learned that Moodie's resume to the Bank contained an inaccurate statement—that he was laid off rather than fired—with regard to the reason for his departure from a previous employer, Paramount Pictures.

As to the cause of action brought under Title VII, the Bank in its motion for summary judgment advances a twofold argument: first, that the record shows indisputably that Moodie was dismissed based on the Bank's conclusion that he had assaulted another employee and the Bank's policy of automatic discharge in such cases; and second, that even if the Bank's decision to terminate Moodie is found to be discriminatory, Moodie's inaccurate resume statement constitutes fraud—giving the Bank a legitimate and sufficient justification for terminating him. The Bank's second argument relies on *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Price Waterhouse*, the Supreme Court held that even when a plaintiff in a Title VII case proves that discrimination played a part in an employer's discharge, the employer may avoid liability by proving that "it would have made the same decision" even if it had not taken the discriminatory biases into account. *Id.* at

237, 109 S.Ct. at 1783. (That defense would not be available for suits brought after the passage of the 1991 Civil Rights Act, which states in § 107 that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.")

As to the cause of action brought under New York law, the Bank argues that state law does not apply because its charter provides that employees are dismissible "at pleasure," 12 U.S.C. § 341 (Fifth), and it is therefore exempt from state employment laws to the contrary.

Moodie opposes the motion on the ground that genuine issues of material fact exist as to the circumstances of the altercation, as well as to the fairness of the Bank's internal investigation and the consistency of its application of the automatic discharge rule. Moodie also cross moves for summary judgment to strike the Bank's "resume fraud" defense.

The Bank's motion for summary judgment on the Title VII cause of action is denied because there remain genuine issues of material fact that go to the heart of the controversy and as to all the propositions enunciated by Moodie: the circumstances of the altercation, whether the internal investigation was conducted in discriminatory fashion, whether the automatic discharge rule was discriminatorily applied in this case, and whether the inaccurate statement contained in Moodie's resume constitutes fraud. Moodie's cross motion for summary judgment to strike the resume fraud defense is denied for the same reason.

The Bank's motion for summary judgment on the state law cause of action is denied because the "at pleasure" language of 12 U.S.C. § 341 alone does not exempt the Federal Reserve Bank from the New York State Human Rights Law, which is not inconsistent with federal employment discrimination law.

## II.

Was the Discharge Discriminatory?

■ The record contains several witnesses' accounts of the altercation. Given the different, if not conflicting, recollections of the witnesses, it is difficult to fully reconstruct what actually happened between Moodie and Riolo. However, in deciding this motion, the Court need only determine whether the Bank's internal investigation was conducted in good faith, whether the Bank's conclusion was reasonable in light of its findings, and whether the Bank's stated policy of automatic discharge in such cases was followed consistently. The testimony and documents of record answer none of these questions definitively. For instance, it remains unclear whether, given the conflicting testimony, the Bank was reasonable in concluding that Moodie alone was at fault, or whether Moodie's conduct during the altercation was sufficiently egregious—under the Bank's own standards—to justify application of the automatic discharge rule. There also remains a question of fact as to whether the Bank has applied this stated policy without exception.

## III.

The Resume Fraud Defense

■ Fact questions also remain as to whether Moodie's inaccurate resume statement constituted fraud and how it affected the Bank's decisionmaking: (1) would the Bank have declined to hire Moodie in the first instance had it known that his resume contained the inaccurate statement regarding his departure from Paramount Pictures, and (2) was the misstatement material and did it constitute sufficient cause to require termination under the Bank's own policy?

Once these facts are determined, there remains the issue of how they ought to impact this litigation. The Bank urges dismissal of the suit if resume fraud is established, citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). However, *Price Waterhouse* is not controlling here because it involved a case of "mixed motives." The plaintiff in that case was denied a remedy for gender discrimination because the Court found that the employer had sufficient non-discriminatory bases for deny-

ing her a partnership. Here, the non-discriminatory reason for dismissal put forth by the Bank—Moodie's alleged resume fraud—was never a factor in the Bank's actual decision to terminate him.

The use of after-acquired evidence of employee misconduct as a defense in employment discrimination cases is an area of law that is still developing. Some courts treat after-acquired evidence of wrongdoing as a complete defense to a charge of wrongful termination. *See Summers v. State Farm Mutual Automobile Insurance Co.*, 864 F.2d 700 (10th Cir.1988) (plaintiff who committed resume fraud was not entitled to his job and, therefore, had no right to complain of discrimination on the job). Other courts use a two-step analysis, determining first whether a violation occurred and, second, whether given the discovered misconduct the plaintiff is entitled to any relief. *See Smith v. Gen. Scanning, Inc.*, 876 F.2d 1315, 1319, n. 2 (7th Cir.1989) (plaintiff who committed resume fraud not entitled to reinstatement but may be eligible for backpay based on when the fraud was discovered).

■ Allowing the use of after-acquired evidence as a complete defense "would have the perverse effect of providing a windfall to employers who, in the absence of their unlawful act and the ensuing litigation, would never have discovered" the wrongdoing. *Wallace v. Dunn Construction Co., Inc.*, 968 F.2d 1174, 1182 (11th Cir.1992). The two-step analysis—using after-acquired evidence only for deciding damages if and when a violation by the employer is found—appears to be the sounder approach as it balances the competing public interests of deterring discrimination while still allowing employers appropriate latitude in personnel decisions.

Accordingly, even if Moodie should ultimately be found to have committed resume fraud in applying for his job with the Bank, that finding will not bar Moodie from pressing his claim of discriminatory discharge; but it presumably would affect the determination of what damages, if any, Moodie is entitled to if he prevails on his claim of discrimination.

## IV.

### Applicability of State Law

■ The Bank contends that it is not subject to the New York State Human Rights Law because the state law conflicts with the Federal Reserve's statutory power to dismiss employees "at pleasure." 12 U.S.C. § 341.

The Bank's preemption argument relies on *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928 (6th Cir.1987), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). The Sixth Circuit there held that, as a Federal Reserve Bank employee, the plaintiff's rights under the Michigan employment discrimination law were preempted by § 341. *Id.* at 931. However, the Sixth Circuit's pronouncement gives no basis for its opinion and sets forth no policy reasons for its holding. In the case at hand, the New York State Division of Human Rights has similarly dismissed on the mere *ipse dixit* that the Federal Reserve Bank is a "corporate instrumentality of the United States Government." For the reasons discussed below, we disagree with *Ana Leon T.* and the New York State Division of Human Rights.

■ In determining whether a state statute is preempted by a federal act, "our task is to ascertain Congress' intent in enacting the federal statute at issue." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983) (determining whether ERISA preempted state disability law by first looking to ERISA's plain language and legislative history).

12 U.S.C. § 341—titled "General enumeration of powers"—provides the basic framework for the organization of Federal Reserve Banks. The Fifth provision, enacted in 1935, empowers the Bank "to appoint by its board of directors a president, vice-presidents, and such officers and employees ... and to dismiss at pleasure such officers and employees." The Bank has put nothing before us to support the view that considerations relating to employment discrimination were of concern to the Congress at that time. It is undisputed that Congress, by the express language of the Fifth provision, intended the Federal Reserve Banks to be employers at

will, conferring no special tenure or contractual rights upon their employees. (Defendant's Brief at 23–24; Plaintiff's Brief at 59–60.) The more difficult question is whether Congress intended the Bank's conduct in employment matters to be exclusively governed by that provision.

Nothing in the plain language of § 341 supports the Bank's view that Congress intended that section to exempt the Federal Reserve Banks, in the area of employment discrimination, from statutes or regulations of the states in which they operate, particularly when the state statutory scheme is consistent with federal legislation.

Moreover, when Congress later enacted Title VII's provisions prohibiting employment discrimination, it took no action to exempt the Federal Reserve Banks on the basis of their status as employers at will, or on any other basis. Indeed, the Bank concedes implicitly that the "at pleasure" language of § 341 does not exempt it from Title VII's prohibition against discrimination in employment; the Bank does not challenge Moodie's Title VII cause of action on those grounds. Therefore, it follows from the Bank's own interpretation that § 341 does not govern exclusively the Bank's conduct in employment affairs.

Although as indicated above, the Bank contends that § 341 preempts state law, it does not argue that Title VII does so. The New York State Human Rights Law, with provisions analogous to Title VII, creates no additional employment rights in conflict with the Bank's status as an employer at will, nor does it place additional constraints on the Bank's exercise of its statutory powers. Furthermore, 42 U.S.C. § 2000e–7 states in relevant part: "[n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty or punishment provided by any present or future law of any State...." In sum, the Bank's position that § 341 preempts the New York State Human Rights Law is not persuasive and its motion for summary judgment as to the second cause of action is denied.

\*     \*     \*

Defendant's motion for summary judgment and Plaintiff's cross motion to strike the resume fraud defense are denied.

It is so ordered.