[Nos. A073882, A074529. First Dist., Div. Two. Nov. 19, 1997.]

VIRGINIA M. MARQUES, Plaintiff and Appellant, v.
BANK OF AMERICA, NT & SA, Defendant and Respondent.

## Counsel

Patricia A. Murphy, Lucas Law Firm, Kathleen M. Lucas, Elizabeth M. Miller and Jeanne M. Darrah for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Christopher Ho, Douglas A. Hedin, Andrea F. Rubinstein and Joseph Posner as Amici Curiae on behalf of Plaintiff and Appellant.

Patricia K. Gillette, Cynthia J. Griffith, Kenneth D. Hoffman and Jay J. Price for Defendant and Respondent.

Paul, Hastings, Janofsky & Walker, Paul W. Cane and Barbra L. Davis as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

### HAERLE, J.—

#### I. Introduction

Virginia M. Marques appeals from a summary judgment in favor of her former employer, Bank of America, NT & SA. She contends the trial court erred in finding that all her claims were preempted by the National Bank Act.

#### II. Factual and Procedural Background

On December 29, 1994, Marques filed a wrongful discharge complaint alleging that she was a 57-year-old Hispanic woman who had worked for

Bank of America for 38 years, was promoted to vice-president in 1992, and terminated in 1994. She alleged causes of action for unlawful discrimination based on age, sex, and national origin under California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), as well as for violation of the state's Equal Pay Act (Lab. Code, § 1197.5), wrongful termination in violation of public policy (FEHA; Unemp. Ins. Code, § 2070 et seq.), breach of contract, and breach of the covenant of good faith and fair dealing. In its answer, the bank asserted as an affirmative defense that all Marques's claims were preempted by section 24, Fifth of the National Bank Act (12 U.S.C. § 21 et seq.). On January 8, 1996, the bank filed a motion for summary judgment on preemption grounds. After a hearing, the court granted the motion and entered judgment accordingly.

Thereafter, the bank filed a memorandum of costs. After filing a timely notice of appeal from the judgment, Marques filed a motion to strike or tax costs and a motion for sanctions (Code Civ. Proc., § 128.5). After a hearing, the trial court denied both motions. Marques's appeal from the postjudgment order has been consolidated with her appeal from the judgment.

## III. Discussion

■ "A defendant may show entitlement to summary judgment either by showing one or more elements of each cause of action cannot be established, or by establishing an affirmative defense. (Code Civ. Proc., § 437c, subd. (n).)" (*Marquez* v. *Mainframe* (1996) 42 Cal.App.4th 881, 884 [50 Cal.Rptr.2d 34].) "[O]n appeal of a summary judgment the proper standard is independent review—we examine the facts as presented to the trial court on a summary judgment motion and independently determine their effect as a matter of law. [Citations.]" (*Id.* at pp. 884-885.)

### A. *National Bank Act Preemption*

■ The National Bank Act (NBA) gives a national banking association the power "[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss* such officers or any of them *at pleasure*, and appoint others to fill their places." (12 U.S.C. § 24, Fifth, italics added.) The trial court found that undisputed evidence showed Bank of America is a national banking association of which Marques was an officer whose termination was ratified by the board of directors (see *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1103 [282 Cal.Rptr. 841, 811 P.2d 1025] (*Wells Fargo*)). It therefore ruled that all her claims were preempted by section 24, Fifth. On appeal, Marques's main contention is that the NBA's "at pleasure" provision does not

preempt claims based on a state antidiscrimination statutory scheme such as FEHA.

■ "Pre-emption may be either expressed or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' [Citations.]" (*Gade* v. *National Solid Wastes Management Assn.* (1992) 505 U.S. 88, 98 [112 S.Ct. 2374, 2383, 120 L.Ed.2d 73].) Congressional intent to preempt state law is implicit in an actual, irreconcilable conflict between state and federal statutes, such that "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citations.]" (*Ibid.*, see also *Barnett Bank of Marion Cty., N. A.* v. *Nelson* (1996) 517 U.S. 25, 31 [116 S.Ct. 1103, 1108, 134 L.Ed.2d 237].) "Nevertheless, preemption is not to be lightly presumed. [Citation.]" (*California Federal S. & L. Assn.* v. *Guerra* (1987) 479 U.S. 272, 281 [107 S.Ct. 683, 689, 93 L.Ed.2d 613].) On the contrary, a party claiming preemption has the burden of overcoming the presumption against it. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 937 [216 Cal.Rptr. 345, 702 P.2d 503]; *Chemical Specialties Mfrs. Ass'n., Inc.* v. *Allenby* (9th Cir. 1992) 958 F.2d 941, 943.) "The 'controlling principle' . . . is that 'any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.' [Citation.]" (*Aalgaard* v. *Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 688 [274 Cal.Rptr. 81] (*Aalgaard*).)[1]

■ In *Aalgaard*, the court held that a FEHA action alleging age discrimination by a national banking association with fewer than 20 employees was preempted by 12 United States Code section 24, Fifth. (224 Cal.App.3d at p. 677.) In so doing, it rejected plaintiff's contention that the preemption doctrine was not applicable to his claim because Congress had enacted a comparable statute, the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.), banning age discrimination by employers of more than 20 persons, not excepting national banks (29 U.S.C. §§ 623, 630 (a) & (b)). (*Aalgaard, supra*, 224 Cal.App.3d at pp. 693-694.) "By implication," the court admitted, "Congress arguably has decreed that national banks with 20 or more employees are bound by the federal age discrimination statute," but no such repeal by implication can be asserted as to smaller national banks. (*Id.* at p. 694.) Thus, the *Aalgaard* case does not foreclose the possibility that *state* discrimination claims against larger banks

---

[1]Marques does not deny that this "conflict pre-emption" (*Gade* v. *National Solid Wastes Management Assn., supra*, 505 U.S. at p. 98 [112 S.Ct. at p. 2383]) bars both of her contract-based claims. (*Wells Fargo, supra*, 53 Cal.3d at pp. 1087-1088 ["It has been established for almost a century that section 24 preempts all state law causes of action by a bank officer for breach of an employment agreement."]; see also *Mardula* v. *Rancho Dominguez Bank* (1996) 43 Cal.App.4th 790, 793 [51 Cal.Rptr.2d 63] (*Mardula*).)

might not be preempted by the NBA to the extent they are cognizable under federal law.[2] The California Supreme Court has subsequently noted the issue, but said "we need not and do not decide this important and difficult question. [Citation.]" (In so doing, it summarized *Aalgaard's* holding as "state age discrimination law preempted by section 24 discharge.") (*Wells Fargo, supra,* 53 Cal.3d at p. 1104.)

As noted in *Mardula, supra,* 43 Cal.App.4th at page 793, federal courts *have* considered the preemptive effect of federal dismissal-at-pleasure provisions (see *ante,* fn. 2) on state discrimination claims with varying results. For example, in *Ana Leon T.* v. *Federal Reserve Bank of Chicago* (6th Cir. 1987) 823 F.2d 928, 931 (*Ana Leon T.*), the court held the Federal Reserve Act's dismissal-at-pleasure provision preempted plaintiff's discriminatory discharge claim under Michigan's statutory scheme, although she could have brought it under title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.). (See also *Osei-Bonsu* v. *Federal Home Loan Bank of New York* (S.D.N.Y. 1989) 726 F.Supp. 95, 97-98 [dismissal-at-pleasure provision of Federal Home Loan Bank Act deprives New York State Division of Human Rights of jurisdiction over discriminatory discharge claims]; *Kispert* v. *Federal Home Loan Bank* (S.D.Ohio 1991) 778 F.Supp. 950, 952-953 [following *Ana Leon T.*].)

On the other hand, in *Moodie* v. *Federal Reserve Bank of New York* (S.D.N.Y. 1993) 831 F.Supp. 333, 336 (*Moodie*), the court disagreed with *Ana Leon T.* because ". . . the Sixth Circuit's pronouncement gives no basis for its opinion and sets forth no policy reasons for its holding." The district court found nothing in the Federal Reserve Act to support the view that Congress considered employment discrimination at the time of its enactment (*Moodie, supra,* 831 F.Supp. at p. 336), and nothing in the language of its dismissal-at-pleasure provision to support the view "that Congress intended that section to exempt the Federal Reserve Banks, in the area of employment discrimination, from statutes or regulations of the states in which they operate, particularly when the state statutory scheme is consistent with federal legislation." (*Id.* at p. 337.) The court held, therefore, that 12 United States Code section 24 did not preempt New York State Human Rights Law claims. (831 F.Supp. at p. 337; see also *White* v. *Fed. Res. Bank* (1995) 103 Ohio App.3d 534 [660 N.E.2d 493, 495-496] [following *Moodie*].)

 ▄██ Marques would have us adopt the *Moodie* analysis, and hold that FEHA does not conflict with the NBA's dismissal-at-pleasure provision,

---

[2] "[T]he cases demonstrate that section 24, and similar provisions covering employees of Federal Reserve Banks (12 U.S.C. § 341) and federally chartered thrift institutions (12 U.S.C. § 1432(a))" do not "appear to bar claims that the discharge violated federal antidiscrimination statutes. [Citations.]" (*Mardula, supra,* 43 Cal.App.4th at p. 793, citing three federal district court decisions.) The bank and its amicus curiae assume arguendo that this is true.

to the extent of its repeal by implication[3] by federal antidiscrimination law. ■ She points out that not only do FEHA and Title VII have identical objectives (*Mixon* v. *Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316 [237 Cal.Rptr. 884]), but their "procedures and remedies" are "wholly integrated and related" (*Salgado* v. *Atlantic Richfield Co.* (9th Cir. 1987) 823 F.2d 1322, 1325-1326). "Parallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme. [Citations.]" (*Prudential Ins. Co. of America* v. *Lai* (9th Cir. 1994) 42 F.3d 1299, 1303, fn. 1.) Preemption of the former would thus "impair and modify" the latter (*Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 101-102 [103 S.Ct. 2890, 2902, 77 L.Ed.2d 490]), frustrating the full purposes and objectives of Congress, which include elimination of workplace discrimination.

The bank counters that allowing claims of workplace discrimination under the law of 50 different states[4] would frustrate the goal of the NBA "to establish a national standard for the dismissal of bank officers which will preserve the public trust in the national banking system." It reasons that while federal antidiscrimination law conflicts with section 24 by limiting a national bank's absolute and unfettered right to terminate its officers' employment, the two can be harmonized—i.e., the NBA may be considered amended by implication (*St. Martin Lutheran Church* v. *South Dakota* (1981) 451 U.S. 772, 788 [101 S.Ct. 2142, 2151, 68 L.Ed.2d 612])—only because "the federal discrimination laws regulate the dismissal rights of national banks in the same manner as the NBA—they apply a uniform and predictable standard, adopted by Congress, to all national banks, regardless of where in the country the bank is located."

"To invoke the concept of 'uniformity,' however, is not to prove its need. [Citations.]" (*Atherton* v. *FDIC* (1997) 519 U.S. 213 [117 S.Ct. 666, 671, 136 L.Ed.2d 656].) "The purpose of the [dismissal-at-pleasure] provision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust." (*Mackey* v. *Pioneer Nat. Bank* (9th Cir. 1989) 867 F.2d 520, 526.) This purpose was explained in some detail over a century ago: "Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity

---

[3]Although repeal by implication is generally disfavored, it is justified "when the earlier and later statutes are irreconcilable." (*Morton* v. *Mancari* (1974) 417 U.S. 535, 550 [94 S.Ct. 2474, 2482, 41 L.Ed.2d 290]; see also *Traynor* v. *Turnage* (1988) 485 U.S. 535, 547-548 [108 S.Ct. 1372, 1381-1382, 99 L.Ed.2d 618] [earlier statute "submerged" if words of later statute would otherwise have no meaning].)

[4]Despite the clear interdependence of federal and state antidiscrimination laws, they differ in reach, remedies and remedial fora, as well as in certain procedural standards.

and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them. High credit is indispensable to the success and prosperity of a bank." (*Westervelt* v. *Mohrenstecher* (8th Cir. 1896) 76 F. 118, 122.) Even when a suspicion of dishonesty or carelessness proved unjustified, ". . . it is necessary to the prosperity and success—to the very existence—of a banking institution that the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence." (*Ibid.*)[5]

It may well be, as amicus curiae California Bankers Association asserts, that "the power to dismiss a bank officer at will reflects the Congressional mandate to establish an independent national system in order to maintain the stability of, and promote the welfare of, national banks. [Citations.]" (*Alegria* v. *Idaho First Nat. Bank* (1986) 111 Idaho 314 [723 P.2d 858, 860].) But once that power is diminished by Congress's determination to outlaw discriminatory terminations, it is hard to see how the public trust rationale mandates "a national standard for the dismissal of bank officers." The national standard enunciated by Congress in Title VII and the ADEA forbids dismissal on the basis of age, sex and national origin, precisely the three types of discrimination alleged here. The congressional goal of eliminating workplace discrimination is not frustrated, but facilitated, by state antidiscrimination law such as FEHA.

Put another way, although national banks are "federal instrumentalities" (*Franklin Nat. Bank* v. *New York* (1954) 347 U.S. 373, 375 [74 S.Ct. 550, 552, 98 L.Ed. 767]) "and, as such, are subject to the paramount authority of federal law" (*ICBA* v. *Bd. of Governors of Federal Reserve System* (D.C. Cir. 1987) 820 F.2d 428, 436 [261 App.D.C. 20]), states may nevertheless regulate them "where . . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers. [Citations.]" (*Barnett Bank of Marion Cty., N. A.* v. *Nelson, supra,* 517 U.S. at p. 33 [116 S.Ct. at p. 1109].) Since, under federal law, a national bank may no longer exercise the power to dismiss at pleasure an officer who can show her termination was discriminatory, state antidiscrimination statutes prohibiting such terminations are not preempted.

This resolution of the preemption issue may be approached in a different way but with the same conclusion. The bank concedes that, of the three

[5]Needless to say, public trust in a large financial institution such as the Bank of America is no longer based primarily on community confidence in the personal integrity of its individual officers. It is up to Congress, however, to decide whether the dismissal-at-pleasure provision has therefore become entirely obsolete. (See *Kemper* v. *First Nat. Bank in Newton* (1981) 94 Ill.App.3d 169 [49 Ill.Dec 799, 418 N.E.2d 819].)

routes to preemption (express preemption, occupation of the field, and preemption by conflict), it can prevail only via the latter. Section 24, Fifth of 12 United States Code necessarily conflicts with the FEHA, it maintains. But, at least as to the subjects of the discrimination dealt with in *both* Title VII and the FEHA (and we reemphasize that this case concerns only such),[6] the enactment of Title VII in 1964 effectively vitiated any such conflict.[7] Subsequent to that enactment, there is simply no conflict between federal law (considered in its fullest sense) and California's FEHA.

In light of this holding, we need not address Marques's more specific contentions that (1) certain of her claims are beyond the scope of the act because they do not arise out of, or relate to, her dismissal, and (2) her dismissal did not comply with the act's requirements. Her claim that the trial court erred in failing to grant her a continuance to conduct further discovery (Code Civ. Proc., § 437c subd. (h)) is likewise moot, especially since the discovery she sought concerned the issue of the bank's compliance with the act's dismissal requirements.

## B. *The Postjudgment Orders*

Marques contends the trial court abused its discretion in awarding the Bank its costs because an award to the prevailing defendant in a case such as this is governed not by Code of Civil Procedure sections 1032 and 1033.5, but by the stricter standard of Government Code section 12965, subdivision (b), an FEHA provision, as construed in *Cummings* v. *Benco Building Services* (1992) 11 Cal.App.4th 1383 [15 Cal.Rptr.2d 53]. Our reversal of summary judgment in all but two of Marques's seven causes of action necessarily entails reversal of the costs award, rendering this issue moot.

Finally, Marques has demonstrated no abuse of discretion (*Dolan* v. *Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1504 [29 Cal.Rptr.2d 903]) in the trial court's ruling that the bank did not engage in sanctionable delaying tactics in producing the minutes of the board of director's meeting at which her dismissal was allegedly ratified.

## IV. DISPOSITION

Summary judgment is affirmed as to the sixth and seventh (contract) causes of action (see *ante*, fn. 1). In all other respects, the judgment is

---

[6](See *Shaw* v. *Delta Air Lines, Inc., supra*, 463 U.S. at p. 103, fn. 24 [103 S.Ct. at p. 2903].)

[7]The drafters of Title VII knew, too, how to legislate exemptions. Title 42 United States Code section 2000e-1(a) and (b), provide for limited exemptions with respect to aliens employed abroad, employees of religious organizations, etc.

reversed, and the cause remanded to the trial court for further proceedings in accordance with this opinion. The postjudgment order is affirmed as to denial of the motion for sanctions, but the trial court is directed to vacate the order insofar as it confirms the award of costs to the bank as prevailing party. Marques is awarded her costs on appeal.

Kline, P. J., and Ruvolo, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 11, 1998. Baxter, J., and Chin, J., did not participate therein.