BROWN, J.—
I dissent.
On close examination, the question before us takes on the aspect of the proverbial “riddle wrapped in a mystery inside an enigma.”[1] Both state and federal courts have variously concluded the “at pleasure” dismissal provision of 12 United States Code section 24, Fifth (section 24, Fifth), fully preempts wrongful termination causes of action under state antidiscrimination statutes, partially preempts such claims, or has no preemptive impact whatsoever. The absence of a clear consensus in this decisional authority reflects the lack of guidance from the United States Supreme Court or, more properly, the Congress.[2] Without such guidance, several plausible answers emerge from the analysis, but none is wholly persuasive or compelling because each depends upon the relative significance assigned the interpretive principles applied.
The rationale for full preemption derives from the fundamental conflict between federal law conferring at-will dismissal authority on boards of *184 directors to maintain bank stability and integrity and state laws qualifying that authority by imposing liability for termination of officers in violation of antidiscrimination statutes. (See Aalgaard v. Merchants Nat. Bank, Inc. (1990) 224 Cal.App.3d 674, 686-693 [274 Cal.Rptr. 81].) However, most courts finding full preemption merely cite Ana Leon T. v. Federal Reserve Bank of Chicago (6th Cir. 1987) 823 F.2d 928, 931, in which the Sixth Circuit Court of Appeals stated without discussion, “Section 4, Fifth, of the Federal Reserve Act . . . specifically provides that employees of a Federal Reserve Bank [such as the plaintiff] may be dismissed ‘at pleasure.’ This provision preempts any state-created employment right to the contrary.”[3] (See, e.g., Kispert v. Federal Home Loan Bank (S.D. Ohio 1991) 778 F.Supp. 950, 952-953; Osei-Bonsu v. Federal Home Loan Bank of New York, supra, 726 F.Supp. at p. 97; see also Mardula v. Rancho Dominguez Bank (1996) 43 Cal.App.4th 790, 793 [51 Cal.Rptr.2d 63]; Bollow v. Federal Reserve Bank of San Francisco (9th Cir. 1981) 650 F.2d 1093, 1100.) Some decisions have with certain justification rejected this determination as “mere ispe dixit”: “the Sixth Circuit’s pronouncement [in Ana Leon T.] gives no basis for its opinion and sets forth no policy reasons for its holding.” (Moodie v. Federal Reserve Bank of New York (S.D.N.Y. 1993) 831 F.Supp. 333, 336; see also Marques v. Bank of America (1997) 59 Cal.App.4th 356, 361-364 [69 Cal.Rptr.2d 154].)
Courts finding partial or no preemption generally follow one or more of several analytical tacks. Some have concluded that “nothing in the legislative history [of the National Bank Act] tend[s] to show congressional intent to preempt state-law discrimination claims. [Citations.]” (White v. Fed. Res. Bank, supra, 103 Ohio App.3d at p. 538 [660 N.E.2d at p. 496]; see Moodie v. Federal Reserve Bank of New York, supra, 831 F.Supp. at pp. 336-337.) Others have determined “that Congress intended the ‘at pleasure’ language [of section 24, Fifth,] to mean ‘at will’ as applied in the common law. The purpose of the ‘at pleasure’ provision was to give national banks the ‘greatest latitude possible to hire and fire their chief operating officers.’ [Citation.] That latitude, however, was intended in a contractual sense.” (Mueller v. First Nat. Bank of the Quad Cities (C.D.Ill. 1992) 797 F.Supp. 656, 663; see also White v. Fed. Res. Bank, supra, 103 Ohio App.3d at p. 538 [660 N.E.2d at p. 496].) Still others, like the lead opinion in this case, have found no conflict between state law and the National Bank Act to the extent title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq. (Title *185 VII)) or the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq. (ADEA)) affords comparable remedies for discrimination in employment. (Marques v. Bank of America, supra, 59 Cal.App.4th at pp. 363-364; White v. Fed. Res. Bank, supra, 103 Ohio App.3d at pp. 538-539 [660 N.E.2d at p. 496]; Moodie v. Federal Reserve Bank of New York (S.D.N.Y. 1993) 835 F.Supp. 751, 753; Moodie v. Federal Reserve of New York, supra, 831 F.Supp. at p. 337; but see Bollow v. Federal Reserve Bank of San Francisco, supra, 650 F.2d at p. 1100 [“The mere existence of [federal] age-discrimination statutes does not create job entitlements for government employees over a certain age.”]; cf. Aalgaard v. Merchants Nat. Bank, supra, 224 Cal.App.3d at p. 694 [state age discrimination claim preempted because bank with fewer than 20 employees not subject to ADEA].)
This latter approach necessarily assumes that Title VII and the ADEA have impliedly repealed or amended section 24, Fifth. Few decisions, however, have critically analyzed the point. (See, e.g., Marques v. Bank of America, supra, 59 Cal.App.4th at p. 364; White v. Fed. Res. Bank, supra, 103 Ohio App.3d at pp. 538-539 [660 N.E.2d at p. 496]; Moodie v. Federal Reserve Bank of New York, supra, 831 F.Supp. at p. 337; see also Ana Leon T. v. Federal Reserve Bank of Chicago, supra, 823 F.2d at pp. 931-932; Mueller v. First Nat. Bank of the Quad Cities, supra, 797 F.Supp. at p. 662; Scott v. Federal Reserve Bank of New York (S.D.N.Y. 1989) 704 F.Supp. 441, 447-448; cf. Jaffe v. Federal Reserve Bank of Chicago (N.D.Ill. 1984) 586 F.Supp. 106, 108 [assuming without discussion that “at pleasure” dismissal provision of Federal Reserve Act did not preempt claim under 42 U.S.C. § 1981].) Here, the lead opinion engages in some discussion but fails to consider whether its conclusions comport with congressional intent as to either the National Bank Act or the antidiscrimination statutes. While it is possible Congress effected an implied partial repeal, such a result is generally disfavored. The legislative intent to do so must be clear and manifest CTV A v. Hill (1978) 437 U.S. 153, 189-190 [98 S.Ct. 2279, 57 L.Ed.2d 117]), particularly to support a finding that a general statute has impliedly repealed a specific one (United States v. United Continental Tuna (1976) 425 U.S. 164, 168-169 [96 S.Ct. 1319, 47 L.Ed.2d 653]).
In my view, two critical reasons—one grounded in congressional intent and policy, the other in pragmatics-—warrant a finding that section 24, Fifth, fully preempts claims by bank officers for violation of California’s Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)).
First, such a finding more fully accords with the underlying rationale for investing boards of directors with unfettered discretion to dismiss bank officers. “National banks are instrumentalities of the Federal government, *186 created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a State to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal government to discharge the duties, for the performance of which they were created. These principles are axiomatic” to the nature of a national banking system. (Davis v. Elmira Savings Bank (1896) 161 U.S. 275, 283 [16 S.Ct. 502, 40 L.Ed. 700].)
More specifically, boards of directors must retain the fullest possible authority to terminate officers at will and without liability to maintain confidence in the financial integrity of their institutions. “[B]ank officers are the vehicles through which the bank engages in transactions and performs legal acts; in this sense, the officers are the bank. [Citation.]” (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1091 [282 Cal.Rptr. 841, 811 P.2d 1025], italics omitted {Wells Fargo).) Among other attributes, they have “the express legal authority to bind the bank in its transactions with borrowers, depositors, customers, or other third parties by executing contracts or other legal instruments on the bank’s behalf. [Citation.] [Their] decision-making authority, however it might be limited by bank rule or policy, relates to fundamental banking operations in such a manner as to affect potentially the public’s trust in the banking institution. [Citations.]” (Ibid.)
Accordingly, “[t]he purpose of the [‘at pleasure’ dismissal] provision in the National Bank Act was to give those institutions the greatest latitude possible to hire and fire their chief operating officers, in order to maintain the public trust.” [Mackey v. Pioneer Nat. Bank (9th Cir. 1989) 867 F.2d 520, 526.) “ ‘[T]he power to dismiss a bank officer at will reflects the Congressional mandate to establish an independent national system in order to maintain the stability of, and promote the welfare of, national banks.’ ” (Wells Fargo, supra, 53 Cal.3d at p. 1089, quoting Alegria v. Idaho First Nat. Bank (1986) 111 Idaho 314, 316 [723 P.2d 858, 860]; Aalgaard v. Merchants Nat. Bank, Inc., supra, 224 Cal.App.3d at p. 692.) As the court in Westervelt v. Mohrenstecher (8th Cir. 1896) 76 Fed. 118 observed more than a century ago: “Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them. High credit is indispensable to the success and prosperity of a bank. Without it, customers cannot be induced to deposit their moneys. When it has once been secured, *187 and then declines, those who have deposited demand their cash, the income of the bank dwindles, and often bankruptcy follows. It sometimes happens that, without any justification, a suspicion of dishonesty or carelessness attaches to a cashier or a president of a bank, spreads through the community in which he lives, scares the depositors, and threatens immediate financial ruin to the institution. In such a case it is necessary to the prosperity and success—to the very existence—of a banking institution that the board of directors should have power to remove such an officer, and to put in his place another, in whom the community has confidence.” (Id. at p. 122; see also Wells Fargo, supra, 53 Cal.3d at p. 1089.)
In the era of global economies, this rationale is all the more compelling; we need not speculate that one individual can bring about the demise of a worldwide financial enterprise. Just as with contract actions, allowing a FEHA cause of action inhibits boards of directors from exercising their “at pleasure” discretion consistently with congressional intent. (See Wells Fargo, supra, 53 Cal.3d at p. 1093.) “The effect would be to substitute [FEHA] for contract claims, thus subjecting the national bank to all the dangers attendant to dismissing an officer.” (Mackey v. Pioneer Nat. Bank, supra, 867 F.2d at p. 526.) Those dangers remain the same regardless of the underlying cause of action. Such claims would “impair[] the efficiency of these agencies of the Federal government to discharge the[ir] duties” (Davis v. Elmira Savings Bank, supra, 161 U.S. at p. 283) and would “stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” (Hines v. Davidowitz (1941) 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581]; cf. Fidelity Federal Sav. & Loan Assn. v. de la Cuesta (1982) 458 U.S. 141, 156 [102 S.Ct. 3014, 3024, 73 L.Ed.2d 664].) Under the supremacy clause, state law must therefore yield.
The fact Congress may have chosen to qualify boards of directors’ discretion by enacting Title VII and the ADEA does not undermine this conclusion. Absent a clear expression of such intent, amendment or repeal of one federal statute by another should not be read as an invitation to append analogous state laws to the national scheme. (Cf. Southland Corp. v. Keating (1984) 465 U.S. 1, 16, fn. 11 [104 S.Ct. 852, 861, 79 L.Ed.2d 1].) Federal antidiscrimination laws apply uniformly throughout the country as to both substance and procedure. Banks can thus conform their conduct to one fixed standard, thereby facilitating the congressional goal of eradicating discriminatory employment practices. (Cf. Atherton v. FDIC (1997) 519 U.S. 213, 226-231 [117 S.Ct. 666, 674-676, 136 L.Ed.2d 656] [uniform national standard not necessary to achieve legislative goal and clear congressional intent to preserve state law standard even if more stringent].)
The value of uniformity underscores the second consideration supporting full preemption. A finding of partial preemption strikes at the essential *188 nature of a national banking system, which depends upon “uniform and universal operation throughout the entire territorial limits of the country . . . .” (Talbott v. Silver Bow County (1891) 139 U.S. 438, 443 [11 S.Ct. 594, 596, 35 L.Ed. 210].) While the system might tolerate a certain measure of local diversity, “it would militate much against its national character” if banks were subject to particular laws in one state but not in another. (Ibid.) As we have seen, courts are divided as to whether state antidiscrimination statutes survive section 24, Fifth. Moreover, each state has a different statutory scheme, both substantive and procedural. Thus, depending upon the jurisdiction in which a claim arose, a bank might or might not be subject to liability, the extent of which would remain uncertain until some court adjudicated the scope of the local law.
Furthermore, the lead opinion of necessity reserves questions of which specific provisions of FEHA are not in actual conflict with Title VII and the ADEA, and therefore survive preemption. (See also lead opn., ante, at p. 176, fn. 8.) State and federal laws “differ in reach, remedies and remedial fora, as well as in certain procedural standards.” (Marques v. Bank of America, supra, 59 Cal.App.4th at p. 362, fn. 4.) For example, not only do Title VII and FEHA have different statutes of limitations, interpretation of those statutes diverges as well. (See Romano v. Rockwell Internat., Inc. (1996) 14 Cal.4th 479, 496-500 [59 Cal.Rptr.2d 20, 926 P.2d 1114] [in construing accrual of cause of action under FEHA, court rejected reasoning of United States Supreme Court as to analogous provisions of Title VII].) Each facet of the law will become a point of preemptive contention with only the vaguest standard to guide the resolution. For this very reason, as the United States Supreme Court recognized in Shaw v. Delta Airlines, Inc. (1983) 463 U.S. 85 [103 S.Ct. 2890, 77 L.Ed.2d 490], that partial preemption “may cause certain practical problems. Courts and state agencies, rather than considering whether employment practices are unlawful under a broad state law, will have to determine whether they are prohibited by Title VII. If they are not, the state law will be superseded and the agency will lack authority to act.” (Id. at pp. 105-106 [103 S.Ct. at p. 2904].) The necessity of such piecemeal determination burdens our judicial system and further impairs uniformity by creating uncertainty and ambiguity in the law. This a high price to pay for a cause of action that merely duplicates remedies already available under Title VII and the ADEA.
Notwithstanding the enactment of federal antidiscrimination statutes, Congress has given no indication it intended to override section 24, Fifth, and subject banks to liability for dismissing officers in violation of state laws such as FEHA. (Cf. Barnett Bank of Marion Cty., N.A. v. Nelson (1996) 517 U.S. 25, 34-35 [116 S.Ct. 1103, 1109-1110, 134 L.Ed.2d 237]; Franklin Nat. *189 Bank v. New York (1954) 347 U.S. 373, 378 [74 S.Ct. 550, 553-554, 98 L.Ed. 767].) “The policy is one of long standing; the ‘at pleasure’ language has been in the statute for 131 years. [Citation.]” (Mardula v. Rancho Dominguez Bank, supra, 43 Cal.App.4th at p. 794.) It should not be lightly discarded, particularly when “Congress has amended other portions of section 24, Title 12 numerous times, without altering paragraph 5 . . . .” (Kemper v. First Nat. Bank in Newton (1981) 94 Ill.App.3d 169, 172 [49 Ill.Dec. 799, 418 N.E.2d 819, 821].) For the foregoing reasons, I would find section 24, Fifth, preempts plaintiff’s FEHA and other state law causes of action. I would disapprove Marques v. Bank of America, supra, 59 Cal.App.4th 356, to the extent it is inconsistent with this conclusion.
George, C. J., and Huffman, J.,* concurred.

Courts are equally in disarray as to whether federal law preempts state causes of action for wrongful termination in violation of public policy. (See Sargent v. Central Nat. Bank & Trust Co. (1991) 1991 Okla. 23 [809 P.2d 1298, 1302] [action permitted because “public policy whose violation gives rise to [the wrongful termination] claim parallels that of the federal law which is sought to be invoked as a shield from liability"]; Booth v. Old Nat. Bank (N.D.W.Va. 1995) 900 F.Supp. 836, 843 [same]; see also White v. Fed. Res. Bank (1995) 103 Ohio App.3d 534, 538 [660 N.E.2d 493]; but see Inglis v. Feinerman (9th Cir. 1983) 701 F.2d 97, 99 [rejecting claim for wrongful termination in violation of public policy].)

The National Bank Act, the Federal Reserve Act, and the Federal Home Loan Act contain the same “at pleasure” dismissal provision, and courts tend to cite interpretive authority interchangeably. (See Osei-Bonsu v. Federal Home Loan Bank of New York (S.D.N.Y. 1989) 726 F.Supp. 95, 97-98.) I will do so as well without necessarily noting which act a particular case involved.

Associate Justice of the Court of Appeal, Fourth District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.