[No. A113611. First Dist., Div. Three. Aug. 30, 2007.]

PADMANABHAN RAMANATHAN, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

COUNSEL

Daniel L. Feder, Kenneth Frucht and Mary S. Cain-Simon for Plaintiff and Appellant.

Patricia K. Gillette, Andrew R. Livingston, Kristen M. Jacoby and Jenney D. Smith for Defendant and Respondent.

OPINION

HORNER, J.[*]—

## INTRODUCTION

Section 24, paragraph Fifth, of 12 United States Code, the National Bank Act (NBA), provides the following powers to a duly organized national banking association: "To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." (12 U.S.C. § 24, par. Fifth (Section 24 (Fifth)).) Courts have long recognized that the power conferred by Section 24 (Fifth) on national banks to dismiss its officers "at pleasure" is protected by the doctrine of preemption from all state law claims filed by their former officers for breach of an employment agreement. (See, e.g., Mackey v. Pioneer Nat. Bank (9th Cir. 1989) 867 F.2d 520, 524–536.) Courts have also acknowledged the doctrine of preemption protects national banks that dismiss their officers under Section 24 (Fifth) from state law discrimination claims filed by their former officers, although in this regard, courts have differed on whether such preemption is total or partial. (Compare Aalgaard v. Merchants Nat. Bank, Inc. (1990) 224 Cal.App.3d 674, 695 [274 Cal.Rptr. 81] [claims under state age discrimination statute totally preempted by Section 24 (Fifth)] with Marques v. Bank of America (1997) 59 Cal.App.4th 356, 363–364 [69 Cal.Rptr.2d 154] [state antidiscrimination claims under FEHA (California Fair Employment and Housing Act; Gov. Code, § 12900) preempted only to the extent they conflict with federal antidiscrimination laws].)

In this case, the trial court decided the state law discrimination claims filed by plaintiff and appellant Padmanabhan Ramanathan (Ramanathan) against defendant and respondent Bank of America (the Bank) were fully preempted

_____

[*]Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

by Section 24 (Fifth) because Ramanathan was an officer of the Bank. On that basis, the trial court awarded summary judgment in favor of the Bank and dismissed Ramanathan's complaint. Ramanathan appeals.

In our view, the key issue on appeal is whether Ramanathan was an "officer" of the Bank under Section 24 (Fifth). If he was not an "officer" of the Bank under Section 24 (Fifth), then his state law discrimination claims are not preempted. If he was an "officer" of the Bank under Section 24 (Fifth), then his state law discrimination claims are preempted, either totally or partially, under the NBA. The Bank's position, adopted by the trial court below, is that because its board of directors duly appointed Ramanathan as a vice-president and duly ratified his dismissal after the fact, then Ramanathan falls automatically within the provisions of Section 24 (Fifth) and all his state law discrimination claims are preempted. In essence, the Bank asserts it may invoke Section 24 (Fifth) and shield itself against state law discrimination claims so long as its board of directors appoints an employee to the status of a vice-president and ratifies that employee's subsequent dismissal, whatever may be the substantive nature of the duties and responsibilities of the employee under the appointed status of a "vice-president."

For reasons more fully explained below, we reject the Bank's interpretation of Section 24 (Fifth). Rather, we hold that where an employee asserts his or her position as "vice-president" is not vested with any of the duties or responsibilities normally associated with such a position—as Ramanathan did here—then to obtain summary judgment on preemption grounds under Section 24 (Fifth) the Bank must show the employee is "an officer" of the bank pursuant to the criteria set forth in *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082 [282 Cal.Rptr. 841, 811 P.2d 1025] (*Wells Fargo*). Because the Bank failed to prove Ramanathan was "an officer" of the bank under *Wells Fargo*, it was not entitled to summary judgment on grounds of preemption under Section 24 (Fifth). Accordingly, we reverse the summary judgment awarded in favor of the Bank and remand for further proceedings.

## FACTS & PROCEDURAL BACKGROUND

Ramanathan filed his complaint against the Bank on October 30, 2003, alleging, among other things, wrongful discharge in violation of public policy and discrimination on various grounds. In the complaint, Ramanathan states he is an observant Hindu and his race is Asian. Also, Ramanathan states he worked for the Bank as a consultant in computer programming from June 2001 until his employment was terminated on February 14, 2003. He alleges

he was hired by two of the Bank's senior vice-presidents, Graham Seel and Allen Pampe, and that he was one of eight programming consultants working under a vice-president of the Bank, defendant Todd Atwood, who in turn was supervised by a senior vice-president of the Bank, defendant Anthony Calderone. Ramanathan also alleged his supervisors harassed and discriminated against him because of his race, religion and national origin, and asserts the bank terminated him in retaliation for complaining about these incidents.

Ramanathan alleged nine causes of action in his complaint. The first six alleged racial, religious and national origin discrimination in violation of California's Constitution, article I, section 8 and Government Code section 12940, subdivision (a) (California Fair Employment and Housing Act or FEHA). The seventh cause of action alleged retaliation in violation of FEHA; the eighth, wrongful discharge in violation of public policy, as expressed by FEHA; and the ninth stated a common law tort claim for intentional infliction of emotional distress. The Bank filed its answer to the complaint on December 22, 2003. The Bank pleaded a general denial and asserted various affirmative defenses, including one that all Ramanathan's causes of action were preempted under Section 24 (Fifth) of the NBA.

The Bank filed its motion for summary judgment on September 2, 2005. In its summary judgment brief, the Bank stated it counseled and disciplined Ramanathan about his work performance before dismissing him effective February 14, 2003. At the time of his dismissal, Ramanathan held the position of a vice-president. The Bank averred that as a vice-president, Ramanathan served "at the pleasure" of the board of directors of the Bank, pursuant to the pertinent provisions of Section 24 (Fifth). The Bank argued it was entitled to summary judgment "because it is undisputed that Plaintiff was a duly appointed Vice President under the NBA . . . and . . . the Bank terminated him in accordance with the provisions of the NBA, [therefore] each and every one of his claims is preempted as a matter of law." The Bank submitted evidence in the form of a declaration by Allison Gilliam, its assistant corporate secretary, together with excerpts from official board of directors minutes, to show (1) the Bank is a national banking association; (2) vice-president is an officer title authorized by and identified in the Bank's bylaws; (3) Ramanathan was appointed a vice-president of the Bank by the Bank's board of directors on October 23, 2001, and was reappointed as such officer on April 23, 2002; (4) Ramanathan held the officer title of vice-president when he was dismissed; (5) Ramanathan's employment with the Bank terminated effective February 14, 2003; and (6) his dismissal was ratified by the Bank's board of directors at its next regularly scheduled meeting on April 22, 2003. Notably, the Bank's separate statement of undisputed facts contains no reference to Ramanathan's actual duties and responsibilities during the time he held the position of "vice-president."

On December 2, 2005, Ramanathan filed his opposition papers to the Bank's motion for summary judgment. Ramanathan argued summary judgment should be denied on two independent grounds—(1) his designated status as "vice-president" did not bring him within the scope of the Section 24 (Fifth); and (2) Section 24 (Fifth) does not preempt his FEHA claims. In support of the first contention, Ramanathan submitted a separate statement of undisputed facts asserting he was hired by the Bank in the position of "Consultant—Applications Programming." In this position, Ramanathan worked as a Web Architect in the Global Corporate Systems Shared Services Group, and his responsibilities included assisting with architecture, design and development of software applications using web technologies.

Regarding his duties and responsibilities, Ramanathan declared he had no employees working under his supervision, and was not responsible for making any decisions relating to the hiring, firing, or performance review of any other employee. Also, he declared his job did not entail entering any contracts on behalf of the bank, nor give him access to financial or mortgage documents or checks, or any information of that sort pertaining to the Bank's relationship with any of its customers. Further, Ramanathan declared that in his job capacity he did not interact or communicate with any of the Bank's customers and had no involvement with the Bank's day-to-day operations in the service of its customers.

After Ramanathan discovered he held the title of "vice-president," he asked his supervisor, Allen Pampe, about it. Pampe told Ramanathan the title was "insignificant" and had no effect on his wages, duties or responsibilities. Ramanathan also provided excerpts from Pampe's deposition testimony, in which Pampe stated all of the bank's employees have two job titles, one functional and one corporate, and the corporate title is really for use in interacting with other corporations.

On December 9, 2005, the Bank filed its reply to Ramanathan's opposition to its motion for summary judgment. In its reply brief, the Bank argued Ramanathan is automatically covered by Section 24 (Fifth) by dint of his title of "vice-president." In its response to Ramanathan's additional separate statement of undisputed facts, the Bank deemed all facts relating Ramanathan's functional job duties "immaterial." On January 11, 2006, the trial court held a hearing on the Bank's motion for summary judgment. Ramanathan's counsel argued Ramanathan was not "an officer covered by the National Bank Act." The trial court issued its order granting motion for summary judgment on January 26, 2006. The trial court ruled as follows: "Plaintiff was a vice president of Defendant Bank of America, National Association (the 'Bank') and the Bank's Board of Directors ratified the decision to terminate Plaintiff. (See *Wells Fargo Bank v. Superior Court*[, *supra*,] 53 Cal.3d

[at pp.] 1087–1088, 1103, in which the court held that the NBA preempts state law claims brought by a vice president—one of the officers specifically enumerated at 12 U.S.C. § 24, Fifth—for a termination that was ratified by the bank's board of directors.) Although *Wells Fargo* did not include a FEHA claim, the Court concludes that the NBA preempts discrimination claims brought under FEHA. *Peatros v. Bank of America NT&SA* (2000) 22 Cal.4th 147 [91 Cal.Rptr.2d 659, 990 P.2d 539]. The Court finds the reasoning in *Peatros* of Justice Kennard, in her concurrence and dissent, and Justices Brown, George and Huffman, in their dissent, persuasive, although not binding." Notice of entry of judgment in favor of the Bank was filed on March 10, 2006, and Ramanathan filed a timely notice of appeal on March 23, 2006.

## DISCUSSION

### A. *Standard of Review*

We review the grant of summary judgment de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To obtain summary judgment, defendant must show "either that one or more elements of plaintiff's claim could not be established, or that there existed a complete affirmative defense to it. (Code Civ. Proc., § 437c, subds. (a), (o)(1), (2), (p)(2).)" (*Martinez v. Chippewa Enterprises, Inc.* (2004) 121 Cal.App.4th 1179, 1184 [18 Cal.Rptr.3d 152].) The moving party bears the burden of persuading the court. (*Ibid.*) In assessing a motion for summary judgment, " ' "[t]he moving party's affidavits are strictly construed while those of the opposing party are liberally construed." ' " (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1369 [122 Cal.Rptr.2d 204].) Here, the Bank persuaded the trial court it was entitled to the complete affirmative defense of federal preemption of Ramanathan's state law discrimination claims under Section 24 (Fifth). As intimated above, however, the underlying question of whether Ramanathan is an "officer" of the Bank within the scope of the Section 24 (Fifth) must first be resolved before it can have any preemptive force on his state law claims.

### B. *Scope of Section 24 (Fifth) of the NBA*

Section 24 (Fifth) grants each national bank the corporate power "[t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of

them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places." Our Supreme Court considered the scope of Section 24 (Fifth) in *Wells Fargo, supra*, 53 Cal.3d 1082.

### (i)

In *Wells Fargo*, three former Wells Fargo branch managers sued Wells Fargo under California law for its alleged wrongful termination of their employment. The branch managers "held appointments as assistant vice-presidents of the bank and exercised significant authority in transactions between the bank and third parties." (*Wells Fargo, supra*, 53 Cal.3d at p. 1086.) After the trial court denied Wells Fargo's motion for summary judgment and the Court of Appeal denied its request for peremptory writs, the Supreme Court granted review in order to consider, inter alia, the issue of whether the plaintiffs were "officers" of a national bank under Section 24 (Fifth). (53 Cal.3d at pp. 1086–1087.) The court noted the plaintiffs sought a restrictive definition of Section 24 (Fifth) by contending it applied only to a bank's senior officers and not to branch managers, whereas Wells Fargo sought an "expansive construction" by contending the plaintiffs were " 'other officers' within the meaning of section 24 [(Fifth)], having been so designated by the bank." (53 Cal.3d at p. 1088.)

The court began its analysis of the issue of whether the plaintiffs were officers of a national bank under Section 24 (Fifth) by examining the history and purpose of the NBA. The court noted the power " 'to dismiss a bank officer at will reflects the Congressional mandate to establish an independent national system in order to maintain the stability of, and promote the welfare of, national banks.' [Citation.]" (*Wells Fargo, supra*, 53 Cal.3d at p. 1089.) The court quoted with approval from *Westervelt v. Mohrenstecher* (8th Cir. 1896) 76 Fed. 118, "one of the earliest cases to consider the at-pleasure dismissal provision in the Act: 'Observation and experience alike teach that it is essential to the safety and prosperity of banking institutions that *the active officers, to whose integrity and discretion the moneys and property of the bank and its customers are intrusted, should be subject to immediate removal whenever the suspicion of faithlessness or negligence attaches to them.*' [Citation.]" (*Wells Fargo*, at p. 1089.) Indeed, in *Peatros v. Bank of America, supra*, 22 Cal.4th 147 (*Peatros*), the court acknowledged that "[t]oday, more than 100 years later, the statement of the *Westervelt* court on the purpose of what is now section 24, Fifth, remains current. [Citations.] The provision's object is 'to give' national banks the 'greatest latitude possible to hire and fire their . . . officers' [citation], indeed, to allow them 'to remove and replace' them 'at will' [citation], in order to 'maintain' their 'stability' [citation], 'protect[]' their 'integrity' [citation], and 'promote' their

'welfare' [citation], all with an eye toward securing and preserving the 'public trust' [citation]. [Citation.]" (*Peatros, supra,* 22 Cal.4th at p. 161.)

 The *Wells Fargo* court reasoned that a "broad construction of the term 'officer' " was necessary to give maximum effect to Section 24 (Fifth)'s purpose of maintaining the stability and integrity of, and preserving the public trust in, the banking system, especially since larger banks are more likely to have " 'such additional officers as comptroller, auditor, trust officer, and functional vice presidents in charge of particular divisions, with assistant officers in these categories . . .' [citation]" who may all be " 'held out to the public as having the authority to act' " on behalf of the bank and " 'bind the bank, in favor of third persons possessing no other knowledge.' " (*Wells Fargo, supra,* 53 Cal.3d at pp. 1089–1090.) Indeed, the court noted "a general banking practice favoring large numbers of officers with the title of 'vice-president' who perform important banking functions under authority ultimately conferred by the bank's board of directors." (*Id.* at p. 1090.) The court also noted the position taken by the California Bankers Association appearing as amicus curiae that bank officers " 'are those in positions of special trust' " with the ability to " 'sign documents which legally bind the bank.' " (*Id.* at pp. 1090–1091, italics omitted.) Accordingly, the court set forth a broad definition of the officers covered by Section 24 (Fifth) as follows: "In view of the language and purpose of section 24 and the history and practice of the banking industry, a bank 'officer' within the meaning of section 24 possesses the following attributes: *First,* he or she holds an office created by the board of directors and listed in the bank's bylaws. [Citation.] *Second,* he or she is appointed by the board of directors, either directly or pursuant to a delegation of board authority set forth in the bylaws. [Citations.] *Third,* he or she has the express legal authority to bind the bank in its transactions with borrowers, depositors, customers, or other third parties by executing contracts or other legal instruments on the bank's behalf. [Citation.] *Fourth,* his or her decisionmaking authority, however it might be limited by bank rule or policy, relates to fundamental banking operations in such a manner as to affect potentially the public's trust in the banking institution. [Citations.] If a particular bank employee holds a position possessing these features, he or she may be viewed as the bank itself in the eyes of third parties. Such an employee is an 'officer' and serves at the pleasure of the board of directors." (*Wells Fargo, supra,* 53 Cal.3d at p. 1091.)

Applying the above construction to the plaintiffs in question, the court noted that "[t]heir officer positions were created by the board and referred to in the bank's bylaws; there is no dispute they had the authority to deal with third parties and bind the bank in third party transactions by executing contracts and instruments. For example, the record reveals plaintiffs could commit the bank to unsecured loans in the form of overdrafts in specified amounts ranging from $10,000 to $250,000. In addition, one of the plaintiffs

was dismissed because of alleged misfeasance in authorizing the negotiation and creation of instruments resulting in a $300,000 loss to the bank." (*Wells Fargo, supra*, 53 Cal.3d at p. 1091.) Also, the court observed that "a branch manager who oversees and supervises the branch bank operations engages in and supervises transactions involving large sums of money which could affect the integrity of the bank and the public trust reposed in it. Such a person is 'the bank' in a significant way in the eyes of customers and third parties. [Citations.]" (*Id.* at p. 1092.) Accordingly, the court concluded the plaintiffs, "[a]s persons holding the office of vice-president and serving as branch managers, . . . were 'other officers' within the meaning of section 24." (*Id.* at p. 1091.)

### (ii)

Of significance for our purposes is that in formulating its definition of "officer" under Section 24 (Fifth), the *Wells Fargo* court declined to employ "the rule of *ejusdem generis*, which provides that the general term 'other officers' should be construed as applicable only to 'persons . . . of the same general nature or class' as the enumerated terms 'president,' 'vice president,' and 'cashier.' [Citation.]" (*Wells Fargo, supra*, 53 Cal.3d at p. 1092.) Justice Kennard proposed such an approach in her concurring opinion, stating: "Section 24(5) applies to 'a president, vice president, cashier, and other officers' of a national bank. The term 'officers' is ambiguous. It may refer to anyone holding an office [citation], or it may refer to 'a person charged with important functions of management such as president, vice president, treasurer, etc.' [Citation.] The context in which the word is used in section 24(5), however, indicates that the term 'other officers' denotes individuals who perform functions similar to those performed by a bank's president, vice-president, or cashier. [¶] . . . [¶] Section 24(5) specifically enumerates 'president, vice president, and cashier.' They are a bank's 'chief operating officers.' [Citation.] [¶] The president of a bank is considered either the executive head of the institution, or the executive agent of the board of directors with authority similar to the authority of a director. [Citation.] . . . Thus, the president of a bank occupies its highest office and may be its most important operational officer. [Citations.] Next in the bank's hierarchy is the vice-president, who acts as the president in the event of the president's absence or inability to act. [Citation.] [¶] The cashier is the bank's institution-wide managing and executive officer [citations] through whom all of the bank's financial operations are conducted. [Citations.] Because of these important and extensive responsibilities, the cashier is considered to possess greater power than the president of the bank. [Citation.] [¶] It is readily apparent from the above analysis that the bank officers enumerated in section 24(5) share these characteristics: they occupy the highest positions in the institution, they have bank wide authority and responsibility, and they are the

institution's chief operational officers. The term 'other officers' follows the enumeration in the statute of 'president, vice president, and cashier.' Thus, the statutory language itself requires that the general words 'other officers' must ' "be construed as applicable only to persons or things of the same general nature or class as those enumerated." ' [Citation.] The term 'other officer' must therefore possess the earlier-described characteristics of a president, vice-president, or cashier." (*Wells Fargo, supra*, 53 Cal.3d at pp. 1106–1107 (conc. opn. of Kennard, J.).)

As noted, the majority opinion in *Wells Fargo* rejected Justice Kennard's analysis and formulated a broader definition of "officer" for purposes of Section 24 (Fifth). (See *Wells Fargo, supra*, 53 Cal.3d at p. 1091.) In rejecting Justice Kennard's application of the rule of *ejusdem generis,* the court stated "banks have historically created and empowered a wide variety of 'other officers' with varying functions and degrees of authority to carry out banking business. Congress has explicitly authorized a national bank's board of directors, not this court, to appoint 'other officers' and to 'define their duties.' [Citation.] Nothing in the language or history of the Act suggests that such duties must be 'high level' or 'bankwide.' . . . As shown above, the use of the term 'officer' in the banking context imports no more than appointment by the board and authority to act for the bank in third party transactions. These characteristics are embodied in the four-part definition we have derived from the case law and relevant banking practice." (*Id.* at p. 1093.)

██ In other words, although Section 24 (Fifth) specifically enumerates only the positions of president, vice-president and cashier as subject to its at-pleasure provisions, banks may extend its scope to "other officers," who need not occupy such high positions in the institution or have bank wide authority and responsibility, *so long as* the duties of such "other officers" meet the four criteria set forth in *Wells Fargo.* (See *Wells Fargo, supra*, 53 Cal.3d at p. 1093.) Accordingly, it would stand the logic of *Wells Fargo* on its head, to conclude, as the Bank would have us do here, that a vice-president *who does not meet* the four criteria is nonetheless "an officer" of the bank under the NBA. Thus, we conclude that if the board appoints a vice-president with defined duties which do not meet *Wells Fargo*'s four-part test, then the board is not entitled to the at-pleasure provisions of Section 24 (Fifth) with respect to such an appointment. To say that any employee designated a vice-president by a bank's board of directors falls automatically within Section 24 (Fifth)'s at-pleasure provisions, regardless of such employee's actual responsibilities, goes against both the logic and spirit of the court's decision in *Wells Fargo.* Our conclusion is bolstered by the Supreme Court's own

closing remarks in *Wells Fargo*. After concluding "the term 'other officers' in section 24 is not restricted to any particular type of officer . . . [p]rovided he or she meets the four criteria described," the Court noted "[t]his case does not require us to determine the outer reaches of the term 'other officers.' We are satisfied that bank employees whose positions possess the four characteristics we have outlined are within the class of persons whom Congress desired to serve at the pleasure of the bank's board of directors. Obviously, bank employees such as janitors, tellers, or others who do not hold offices *or enjoy the requisite authority to deal with third parties on the bank's behalf* do not fall within the scope of section 24." (*Wells Fargo, supra*, 53 Cal.3d at p. 1094, italics added.) Similarly, as discussed further below, this record indicates Ramanathan did not "enjoy the requisite authority to deal with third parties on the bank's behalf" and therefore he does "not fall within the scope of section 24." (*Ibid.*)

### (iii)

We turn now to the issue of whether Ramanathan's position as vice-president meets the four-part test set forth in *Wells Fargo*. Ramanathan concedes his position satisfies the first two parts of the test—he holds "an office created by the board of directors and listed in the bank's bylaws" and his appointment was made by the board of directors "pursuant to a delegation of board authority set forth in the bylaws." (*Wells Fargo, supra*, 53 Cal.3d at p. 1091.)

However, Ramanathan contends his position does not meet the other two *Wells Fargo* factors. First, he states he was given no authority "to enter into contracts or other transactions with third parties, including borrowers, depositors, or customers, and thus could not legally bind the bank." Moreover, his position "as Consultant-Applications Programming was such that he was never put in a position where he would have an opportunity to enter into any contracts on behalf of the Bank, and no one ever told him that he did have that authority." Second, he states he had no access to "financial or mortgage documents or checks, financial information about customers, bank statements, certificates of deposit, account numbers, account balances, customer names and addresses, or any other information pertaining to the Bank's relationship with any of the Bank's customers." "Simply put," Ramanathan asserts, "[he] was never in a position of authority, and had no decision making authority that related to fundamental banking operations."

The Bank states Ramanathan "worked as a 'web architect' . . . providing and evaluating technology solutions for the Bank's business operations" but does not otherwise describe the specific nature of his duties or contest his assertions concerning the limits of his responsibilities as a "web architect" or

computer programmer. Instead, the Bank adheres to the position it took before the trial court, namely, under "the plain language of Section 24 (Fifth), officers with the title of 'vice-president' *automatically* satisfy" the *Wells Fargo* test, and so Ramanathan, as a "vice-president," is "expressly subject to the NBA without further analysis as to his authority." The Bank notes none of the plaintiffs in *Wells Fargo* held the position of vice-president but were assistant vice-presidents and branch managers, leading "the Court . . . to explore whether they fell into the 'other officer' category referenced in the statute." By contrast, the Bank continues, Ramanathan was a vice-president, therefore *Wells Fargo*'s " 'other officer' test" does not apply here and, "as a matter of law, the dismissal-at-pleasure provision of the NBA applied to him . . . ."

We have already rejected the Bank's interpretation in the discussion of *Wells Fargo* in part (ii), *ante*. Nonetheless, we acknowledge *Wells Fargo* never addressed the specific question of whether an employee is covered by Section 24 (Fifth) merely by virtue of his or her designation as a vice-president, regardless of whether such an employee has no significant banking duties. We also acknowledge that in *Wells Fargo* "[n]one of the plaintiffs held the positions of president, vice-president, or cashier . . . [and] [e]ach . . . was an assistant vice-president and branch manager" (*Wells Fargo, supra*, 53 Cal.3d at p. 1088), so the Court addressed the question of "whether he or she was one of the 'other officers' referred to in section 24." (*Ibid.*) But as explained above, *Wells Fargo* compels the conclusion that the duties of those appointed by the board of directors as the principal officers of the bank enumerated in Section 24 (Fifth)—a president, vice-president or a cashier— must at least be as great as those "other officers" appointed by the board. In other words, the broader category of "other officers" subsumes the narrower category of principal officers, so that the *Wells Fargo* criteria are those possessed by a bank "officer," including vice-president. (See *Wells Fargo, supra*, 53 Cal.3d at p. 1091.)

This is only fair, because under the NBA "[a] national bank is granted a broad and unique exemption from state wrongful discharge law" (*Wells Fargo, supra*, 53 Cal.3d at p. 1099), so there must be room to factually dispute the issue of who qualifies under the NBA. Without such a check, a bank might be unduly motivated to label as many employees as possible "officers" in order to preclude such state law claims. To decide Ramanathan falls within Section 24 as a matter of law based solely on his designation as "vice-president," is really to decide the issue on the Bank's say-so. According to the Bank, the fact that its board gave Ramanathan the title is sufficient to bring him within the NBA, regardless of his actual position within the Bank or his job duties. We decline to adopt a holding which grants the Bank such unilateral power over its employment relations.

■ Having rejected the Bank's argument, we are left with Ramanathan's essentially unrefuted assertions regarding the limited nonbanking nature of his duties and responsibilities as a computer programming consultant. Thus, the Bank has failed to show Ramanathan was an "officer" of the bank subject to the at-pleasure provisions of Section 24 (Fifth). On the other hand, Ramanathan raised issues of material fact as to whether he qualifies as an "officer" under the *Wells Fargo* criteria. Accordingly, the trial court erred in granting summary judgment in favor of the Bank.[1]

---

[1] We therefore need not address the Bank's contention that Ramanathan's claims are totally preempted under *Peatros*, because unless and until the Bank shows Ramanathan is an "officer" of the bank for purposes of the NBA, it may not invoke federal preemption to preclude his state law claims.

We also note *Peatros* has no bearing on the issue we must decide—whether an employee is an "officer" for purposes of the NBA merely by virtue of a bank's designation as such and regardless of that employee's actual duties and responsibilities. In *Peatros*, the "sole question on review" was whether "in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA" (*Peatros, supra*, 22 Cal.4th at p. 156; see also *id.* at pp. 154, 167), *and the parties did not dispute Peatros was an "officer" for purposes of the NBA under the* Wells Fargo *criteria*. The facts bear this out because *in her complaint* Peatros alleged: "The bank employed her as an officer, specifically, a vice-president, and assigned her to work as a branch manager. . . ." (22 Cal.4th at p. 154.) Undisputed facts showed that in course of her employment "within a period of a single week, and at the hands of a single customer, she caused it to suffer losses in the amount of almost $135,000 when she approved for immediate credit, without any uncollected-funds hold, the deposit of a series of three checks in the amounts of $100,000, $20,000, and $15,000, which were drawn on out-of-state banks and later returned unpaid because they were not covered by sufficient funds." (*Id.* at p. 155.)

At oral argument, the Bank's counsel argued that if the Bank chose to designate all of its employees, "including janitors, maintenance workers, everyone" as "vice-presidents," then they too would all be covered by the provisions of the NBA. For this startling assertion, the Bank's counsel relied on *Peatros*, which she argued held that a bank employee is an officer of the Bank for purposes of the NBA according to his or her designated job title, regardless of the actual duties he or she performed on behalf of the Bank. The *Peatros* court delivered no such sweeping holding. Counsel for the Bank referred us to *Peatros, supra*, 22 Cal.4th at p. 177, where the three-justice lead opinion states: "As a vice-president, [Peatros] was one of the officers expressly enumerated by the provision, whether or not she would be included among its 'other officers' solely by virtue of her work as a branch manager." Such dicta is not central to the three-justice majority's holding in *Peatros*. We repeat, the sole question on review in *Peatros* was whether "in the face of Title VII and the ADEA, section 24, Fifth, preempts FEHA" (*Peatros*, 22 Cal.4th at pp. 156, 167), and on that issue the three-justice lead opinion held that "section 24, Fifth, as impliedly amended by Title VII and the ADEA, preempts FEHA to the extent that it conflicts, but it does not to the extent that it does not." (*Peatros*, 22 Cal.4th at p. 173.) The three-justice dissent focused exclusively on the issue of preemption, would have found "section 24, Fifth, preempts plaintiff's FEHA and other state law causes of action" (*Peatros*, 22 Cal.4th at p. 189 (dis. opn. of Brown, J.)), and did not even allude to, far less discuss, Peatros's job title or duties. Thus, we decline to ascribe any legal significance to the Bank's reference to the *Peatros* case on the issue before us today.

## DISPOSITION

We reverse the superior court's grant of summary judgment and remand for further proceedings consistent with this opinion.

McGuiness, P. J., and Siggins, J., concurred.